## Taylor vs. Commonwealth.

### ERROR TO SHELBY COUNTY COURT.

### Gathright vs. Same.

### ERROR TO OLDHAM COUNTY COURT.

1. Where a statute passed proposing to take from one county and add to another part of its territory, the lines should not be so run as to interfere with and take part of a third county, but the calls pursued to the line of the third county and thence follow the line to the county line as the terminous.

2. Where there was a statute passed to take territory from one county and add it to another, and no authority given for fixing the boundary, and the surveyors of the two counties run it differently, individuals residing in the territory, showing no disposition to evade the payment of taxes, should not be held responsible for the penalties unpaid by action for failing or refusing to list their property, though they were in error as to the true jurisdiction.

By an act of the Legislature, passed on the 1st of January, 1852, for adding a part of the territory of Shelby county to the county of Oldham, no authority

*Margin notes:*

TAYLOR
vs.
COMMONWEALTH
GATHRIGHT
vs.
SAME.

MOTION.

Case 3.

TAYLOR
vs.
COMMONWEALTH
GATHRIGHT
vs.
SAME.

was conferred for running and marking the line. The surveyor of Shelby county attempted it, but failed to complete it, reporting it impracticable to do so, and comply with the act. The surveyor of Oldham run the line. The County Court of Shelby summoned Taylor before it, and gave judgment for fine, &c., for failing to list his property for taxation with the assessor of Shelby county. The County Court of Oldham summoned Gathright before it, and in like manner fined him for failing and refusing to list his property for taxation with the assessor for the county of Oldham. Both cases are before this court, and the questions involved being the same, are heard together.

*Tho. W. Brown, J. M. & W. C. Bullock*, for appellant—

1. The 876 section of the Code of Practice sustains the right of appeal in this case. The statute under which the proceeding was conducted is highly penal in its character, and should be subjected to a strict construction. (*Shaw vs. Markham*, 4 *J. J. Marshall*, 578.)

2. The record does not show such delinquency on the part of Gathright as to authorize the proceeding. Art. 6, sec. 5, page 561, shows that the report of delinquency should have been made to the county court clerk, and not to the court. By sections 20 and 21 the fine can only be imposed for failing to list property for taxation after being legally called on. The record does not show that the party was legally called on. No authority exists with the assessor to institute such a proceeding as this; it properly belongs to the county attorney.

3. Gathright having been, prior to the passage of the statute, a citizen of Shelby county, and the line proposed never having been run by authority, and it being considered impracticable to do so and conform to the requisitions of the statute, and Gathright having listed his property in Shelby in 1852, he might

justly conclude that it was proper to do so in 1853. He was not named as one who, by the change of boundary, was to be thrown into Oldham, as were others. The acts of the surveyor of Oldham were not authorized by law, and not binding upon Gathright, and not evidence against him; except which there is no evidence that he is in Oldham county.

4. It is urged that until the line is run, according to the terms of the act, the whole extent, and marked, showing Gathright to be in Oldham, he should be regarded as a citizen of Shelby county.

*Harlan, Attorney General,* for commonwealth—

As to the case of Taylor he was returned by the assessor, for Shelby county for refusing to list his property for taxation, and he was fined and triple taxed. He has appealed to this court and seeks a reversal of the judgment.

It is difficult to understand the facts of the case as presented by this record; but the appellant has failed to show that the judgment of the County Court is erroneous, and consequently it must be affirmed.

The proceedings in this case were instituted under the Revised Statutes, title "Revenue and Taxation," page 565, and are in conformity to law.

This court will presume that Taylor lives in Shelby county. He did not attempt to prove he had listed his property for taxation, and if he succeeds in this case he will probably avoid the payment of any tax in any county.

The judgment should be affirmed.

As to the case of Gathright the proceedings were had against Gathright in the County Court of Oldham for failing to list his property for taxation. The record shows that the proceeding conformed to the 22d section, title "Revenue and Taxation," Revised Statutes, 565.

The jury found the defendant guilty, and assessed his fine at one cent. The court ascertained the value of Gathright's property, and fixed the tax at $3 99,

TAYLOR
vs.
COMMONWEALTH
GATHRIGHT
vs.
SAME.

TAYLOR
vs.
COMMONWEALTH
GATHRIGHT
vs.
SAME.

and rendered a judgment for $11 98, being triple tax and one cent, the damages found by the jury, together with costs. Defendant moved for a new trial, which being overruled he has *appealed* to this court.

I contend—1. That an appeal does not lie. By the act of 1796, (1 *Statute Law*, 128,) appeals are limited to £30, or a controversy relating to a franchise or freehold. The act of 1841 authorizes an appeal or writ of error to a judgment on an indictment for a misdemeanor if it amounts to $20. (3 *Statute Law*, 37.) Neither of these acts authorize an appeal. In the case of *Johnson vs. Commonwealth*, 7 *Dana*, 338, the fine against Johnson was $20.

If I am right, the appeal must be dismissed.

2. But if the court has jurisdiction, I contend there is no error of which the appellant can complain. The proof is very clear he lived in Oldham county and refused to list his property for taxation, and for that failure he was proceeded against in the manner prescribed by the 22d section Revised Statutes, page 565.

December 6.

Chief Justice MARSHALL delivered the opinion of the Court.

By an act approved January 1st, 1852, it is enacted that from and after its passage "the county line between Shelby and Oldham counties shall be so changed as to include within the county of Oldham all that part of the county of Shelby lying between the present line of said counties and the following described line, to-wit: beginning at a point in said line, at the mouth of Caney run, on the land of W. W. Taylor, and running thence on a straight line to a point on the Shelbyville and Bedford road, on the land of J. W. Berry, including said Berry in Oldham county; and running thence to a point where the present line between said counties crosses said road; and said territory, so taken from Shelby county, shall belong to that district in Oldham county to which it is immediately contiguous."

TAYLOR
*vs.*
COMMONWEALTH
GATHRIGHT
*vs.*
SAME.

The foregoing being the whole of the act, it is perceived that there is no provision for the authoritative running of the line, without which persons living in the general direction between the point of beginning and J. W. Berry's land might not know in which county they were included and in which they should give in their tax list, and perform the ordinary local services; for the act does not fix precisely by description the point on Berry's land to which the first line is to run; and even if it did, it can hardly be supposed that the statute intended that individuals should run the line for themselves, or otherwise determine its locality at their peril, and as it appears that it is several miles in length, there would be room for honest mistake until its precise location should be fixed, and especially as one of its termini is not definitely fixed by the words of the act.

But not only is the act not precisely definite in the particular just noticed, but there is in fact no point upon the road from Shelbyville to Bedford at which the lines of the counties of Shelby and Oldham cross said road. There is therefore an entire defect or mistake in the act in describing the point at which the second line (if its beginning be fixed,) is to terminate. It is only by construction that the boundary line from the point in J. W. Berry's land is to be located. And although we are of opinion that, by construing the act with reference to the objects existing on the ground, and also with reference to its own manifest purposes, the entire boundary may be located with reasonable certainty, whereby the act will be rendered effectual, it seems to have been considered by some that the line could not be run without such a departure from the statutory description as would make it void, and that the statute itself was of no effect on account of its uncertainty and impracticability, and of course that the two counties remained as they were before its passage. Such seems to have been the opinion of commissioners appointed by the County Court of Shelby county to run the line

TAYLOR
*vs.*
COMMONWEALTH
GATHRIGHT
*vs.*
SAME.

in question, and of their surveyor, and also of the County Court itself, which continues to claim jurisdiction to the extent of the original boundary. But the commissioners appointed for the same purpose by the County Court of Oldham, ran the boundary line from the beginning described in the statute to a point in the Shelbyville and Bedford road, on the land of J. W. Berry, and including his farm ; thence with said road to the Henry county line, which crosses it at no great distance; and thence with the Henry county line about the same distance until it meets the original boundary line between the counties of Shelby and Oldham. And the county court of Oldham claims jurisdiction over the territory and inhabitants included between said boundary line and the original line of Shelby and Oldham. In consequence of these conflicting opinions and claims, some of the inhabitants of this territory regard themselves as being still in the county of Shelby, while others consider themselves as citizens of Oldham.

The two cases named at the head of this opinion grew out of the state of things which has been described. The case of Taylor vs. the Commonwealth is an appeal from the County Court of Shelby county, imposing a fine and triple tax upon Taylor for refusing to give a list of his taxable property, in the year 1853, to the assessor of Shelby county ; and the case of Gathright vs. the Commonwealth is an appeal from a similar judgment of the Oldham County Court, against Gathright, for refusing to give the list of his taxable property for the same year to the assessor of Oldham county. In each of the cases the facts, as above stated, were substantially proved. And with respect to Taylor, it was further proved that, according to the line actually run by the commissioners of the Oldham county court, and according to any straight line which could be run from the beginning designated in the statute to a point in the Bedford and Shelbyville road, upon the land of J. W. Berry, and in Shelby county, (as it was,) Taylor would be in-

cluded in the territory cut off from Shelby and added to Oldham by said line. And that ever since the enactment of the statute changing the boundary line between the two counties, he had claimed to be and acted as a citizen of the county of Oldham, had listed his property for taxation with the assessor of that county, and had in fact so listed it for the year 1853. In the case of Gathright, who was prosecuted in Oldham county, it was proved that although the line as run by the commissioners of that county did in fact include him in that county, this was considered doubtful by some at the time, and it is not proved that he would be included in Oldham county by every straight line that could be run from the beginning called for, to a point on the Bedford and Shelbyville road on the land of J. W. Berry, and including Berry in said county; nor is it now proved that he knew that he was included in said county by the line actually run, or knew that such line had been run. But it is proved that when applied to by the assessor of Oldham county, he referred to the difficulty in fixing the line, claimed to be a citizen of Shelby county, and said he would give in his list in that county; and that his list was afterwards actually given in to the assessor of Shelby county. It may be inferred from the facts detailed, and is stated by several of the commonwealth's witnesses as their belief, that Gathright's refusal to give his list to the assessor of Oldham county proceeded, not from any desire to avoid the payment of taxes upon his property, but from the belief that he was a citizen of Shelby and not of Oldham county. The same belief was entertained by the County Court of Shelby, and by the assessor of that county, and by others; and as already stated it does not appear but that the first line of the territory cut off from Shelby, might have been run in strict accordance with the language of the statute without including Gathright in the county of Oldham, and that no authority having been given to the County Court of that county to fix the boundary by having it run

TAYLOR
vs.
COMMONWEALTH
GATHRIGHT
vs.
SAME.

TAYLOR
*vs.*
COMMONWEALTH
GATHRIGHT
*vs.*
SAME.

out upon the ground, the line run by its commissioner was not binding upon the county of Shelby, or the individuals concerned in the boundary. But the true position of the new county line does not depend upon the opinions of individuals, nor of the County Courts or their officers. If the statute is to have effect—and it must have effect if it contain enough on its face, in connection with the objects referred to, to give position and identity to the boundary called for—it adds to the county of Oldham, from the date of its passage, a certain territory, and the inhabitants thereof, which had formerly been included in the county of Shelby, and the officers and tribunals to which these inhabitants owe their local duties are to be determined by their residence in reference to this territory. And although upon the face of the statute, in connection with the external objects called for, the boundary of this territory is imperfectly described, yet there may be and we think there is enough to fix the exact position of the boundary; and as the statute prescribed no particular mode for running and thus fixing the boundary, its proper position remained to be decided authoritatively as a judicial question to be determined upon evidence and by actual survey, ordered or already made, when the question should become material to the decision of a case properly before a court of competent jurisdiction.

1. When a statute passed proposing to take from one county and add to another part of its territory, the lines should not be so run as to interfere with and take part of a third county, but the calls pursued to the line of the third county and thence follow the line to the county line as the terminus.

Then recurring to the statute, we find that its only object is to add a definite portion of the county of Shelby to the adjoining county of Oldham. In defining this territory, it of course intends that the original line between the two counties should form a part of the boundary, and that the residue should meet that line at two points, so as to make a perfect figure or tract of territory within the county to be diminished; and this boundary should be run without taking in the territory of any other county, unless it is so expressly described as to include such territory.

When therefore it is found that the Bedford and Shelbyville road, in which the first line of the new boundary terminates, does not meet the original line between the two counties at all, nor the line of Shelby county, unless after it passes through and cuts off a part of Henry county, but that in a short distance it comes to the Henry county line, which in a short distance leads to the original line between Shelby and Oldham, and thus by following that line to the beginning forms a complete tract of territory, answering every object of the statute, and conforming substantially and almost literally to its calls. We think the principles just stated plainly indicate that this is the territory intended to be added to Oldham, and that the omission to call for the Henry county line is not fatal, but still leaves enough to give certainty to the boundary. Thus far then the line as run by the Oldham commissioners is correct.

With regard to the first line, the words of the statute, in reference to J. W. Berry, might be satisfied by its merely including his house, or by its including his farm, or by its including his whole tract, which, upon the words alone, might be most proper. But if it merely included his house it would not run to the Bedford and Shelbyville road. It should therefore include his farm, or so much of it as is on the nearer side of the road and within the county of Shelby, which is done by the line of the Oldham commissioners, which includes both Taylor and Gathright in Oldham county.

We are of opinion, therefore, that each of these parties should have given in his tax list in the county of Oldham. And as Taylor did so, he is clearly not liable to the fine and triple tax, and the judgment against him is therefore reversed, and indeed was rendered without jurisdiction.

It might seem to follow, from the position which we have given to the new boundary between these counties, that the fine and triple tax were properly adjudged against Gathright, who is included in the

TAYLOR
vs.
COMMONWEALTH
GATHRIGHT
vs.
SAME.

2. When there was a statute passed to take territory from one county and add it to another, and no authority given for fixing the boundary, and the surveyors of the two counties ran it differently, individuals residing in the territory, showing

no disposition to evade the payment of taxes, should not be held responsible for the penalties imposed by statute for failing or refusing to list their property, though they wore in error as to the true jurisdiction.

county of Oldham, and has been ever since the passage of the statute to which we have referred. But when we consider that this penalty, and the remedy for enforcing it, were obviously provided for the mere purpose of securing the revenue, by forcing individuals to render a just account of their taxable property, that it was not intended for the settlement of disputes or conflicting claims between County Courts, by imposing heavy mulcts on individuals who were rendering to the state all that was justly due, and were honestly mistaken with regard to the particular officer to whom they must account; and when we consider further the particular circumstances of this boundary line which might induce an honest mistake on the part of Gathright, we are inclined to the opinion and adopt the conclusion that it would be carrying the statute beyond its obvious intent to apply it to a case of this character; and that upon the undisputed facts of this case the verdict of guilty rendered by the jury is against law, and should have been set aside on the motion of the defendant, and that the judgment thereon is erroneous, and must be reversed.

Wherefore, each of the causes is remanded for a new trial according to the principles of this opinion, if the prosecutions are persisted in.